Argued May 6, affirmed November 25, 1964

STATE OF OREGON *v.* DOTSON

396 P. 2d 777

*William L. Jackson,* Baker, argued the cause and filed a brief for appellant.

*Jesse R. Himmelsbach, Jr.,* District Attorney, Baker, argued the cause and filed a brief for respondent.

Before MCALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

McALLISTER, C. J.

The defendant, Dorrel George Dotson, was indicted of murder in the second degree, was convicted of manslaughter, and was sentenced to imprisonment in the penitentiary for a term not to exceed 15 years. Defendant appeals.

The sole question presented in appellant's brief is whether the court erred in admitting testimony concerning admissions and confessions made by defendant after his arrest and before he was taken before a magistrate.

As a witness on his own behalf defendant testified that at about 10:00 o'clock p.m. on Wednesday, April 10, 1963, he shot and killed one Camillous P. Lawrence in front of defendant's home at Sumpter, in Baker county. Sumpter is a small community about 29 miles from Baker. Defendant testified that he and Lawrence had been drinking together during the afternoon and evening, and that he shot in self-defense after Lawrence had threatened to sleep with defendant's wife and had struck at the defendant with a whiskey bottle.

It appears from the testimony that at about 11:40 p.m. defendant's wife telephoned the sheriff of Baker county and informed him of the killing. The sheriff, accompanied by one of his deputies and the coroner, drove from Baker to Sumpter, arriving at about 12:25 a.m. on April 11. Two state police officers also arrived in Sumpter at about the same time as the county officials. After an investigation in front of the house where the body was lying, the sheriff entered the house and talked to the defendant. It is undisputed that the defendant told the sheriff and the other officers present that he killed Lawrence, and also told

of the events during the afternoon and evening leading up to the shooting.

At about 12:45 a.m. the sheriff arrested the defendant on a charge of first degree murder. About an hour later defendant was taken by the sheriff from Sumpter to a hospital in Baker were defendant submitted to a blood test and a paraffin test. Defendant was then taken to the county jail where he submitted to another blood test, and about 4:30 o'clock a.m. was locked in a cell. About 10:00 o'clock a.m. defendant was taken before a magistrate in Baker.

It is undisputed that from the time defendant was first interviewed by the sheriff until he was locked in a cell, about four hours later, he repeatedly admitted the shooting, and also uttered many other incriminating admissions. Some of the admissions were voluntary and some were in response to questions. Most of the admissions were made after the investigation had focused on the defendant, and, in fact, after he had been charged with the murder.

The sheriff, the coroner and a state policeman all testified that before defendant was questioned he was informed of his right to remain silent, and that the warning was repeated on several occasions. This testimony was not disputed by defendant. There is no evidence that defendant was advised of his right to counsel before he was asked about the shooting, but it is undisputed that the sheriff offered to call a lawyer for defendant soon after he was taken to the county jail. Defendant declined the offer with the statement that he preferred to wait until later in the morning.

Defendant does not contend that his admissions were not free and voluntary. Neither does he contend that his right to remain silent or his right to counsel was violated. Neither does he complain because the

trial judge did not independently pass on the voluntariness of his admissions. In fact, the record brought here does not disclose how voluntariness was determined in this case. Defendant makes only the formalistic contention that because he was not taken *instanter* before a magistrate the court erred in admitting, over his objections, testimony concerning his admissions. We think the contention raised and others which might have been raised were waived by the defendant when he took the witness stand and repeated in substance the same admissions about which the officers testified. The defendant testified not only how he shot Lawrence, but why. He testified about the drinking engaged in by himself and the decedent, the slurs and threats involving defendant's wife, and decedent's attempt to assault him. In addition to defendant's testimony, his counsel cross-examined the sheriff extensively and elicited from him testimony concerning additional admissions not mentioned on direct examination. It appears that all this testimony was introduced to persuade the jury either to acquit the defendant or to convict him of a lesser included crime. Although it is beside the point, defendant's strategy was at least in part successful.

When defendant elected to repeat to the jury his pretrial admissions, we think he waived every objection he might have urged to other proof by the state of the same or similar admissions. *State v. Freeman*, 232 Or 267, 279, 374 P2d 453 (1962), cert. den. 373 US 919, 83 S Ct 1310, 10 L Ed2d 418 (1963).

The judgment is affirmed.