Clarence T. **GLADDEN**, Warden, Oregon
State Penitentiary, Appellant,

v.

William Edward **UNSWORTH**, Appellee.

No. 21738.

United States Court of Appeals
Ninth Circuit.

May 1, 1968.

Helen B. Kalil (argued), Asst. Atty. Gen., Robert Y. Thornton, Atty. Gen., Salem, Or., for appellant.

Edward J. Murphy, Jr., (argued) of Wheelock, Richardson, Neihaus & Baines, Portland, Or., for appellee.

Before HAMLEY and ELY, Circuit Judges, and WEIGEL, District Judge.

HAMLEY, Circuit Judge:

Clarence T. Gladden, Warden of Oregon State Penitentiary, appeals from a

district court order granting a writ of habeas corpus to William Edward Unsworth. The district court opinion is reported. Unsworth v. Gladden, D.C.Or., 261 F.Supp. 897.

Unsworth is in Oregon State penal custody under a life sentence, following his conviction for second degree murder. The conviction grew out of an incident which happened in the cabin of Unsworth and his wife at Beatty, Oregon, about midnight, April 15, 1962. At that time one Tony Moore was visiting the Unsworths in their cabin when Unsworth shot Moore with a rifle. The state prosecuted on the alternative theories that Unsworth either intended to kill Moore, or accidentally killed him while attempting to kill Mrs. Unsworth.

One of the grounds relied upon by the district court in granting the writ relates to the reception in evidence at the state trial of a transcribed question and answer statement, signed by Unsworth, containing the admission that he shot Moore. Unsworth made this statement in the office of the district attorney about 5 p.m., April 16, 1962, seventeen hours after the shooting. Those present during the interrogation were, in addition to Unsworth, James Murray Brittan, sheriff of Klamath County, Oregon, John R. Thomas, deputy district attorney, Delbert Sommers, deputy sheriff, and Sue Cromwell, a stenographer. The questioning of Unsworth was, for the most part, conducted by Thomas.

The district court held, in effect, that Unsworth had been denied due process of law when, after counsel for Unsworth objected to reception of the statement in evidence on the ground that it was not given voluntarily, the trial court overruled the objection without first granting Unsworth a hearing, out of the presence of the jury, on the question of voluntariness. Examination of the transcript of the state trial, however, indicates that Unsworth was accorded a hearing on that question outside the presence of the jury. Apparently what the district court meant to say was that the state trial court, after conducting such a hearing, declined to rule on the question of voluntariness. Instead the trial court said: "The Court feels that this is a jury question."

In Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, the Supreme Court of the United States held that, as a matter of due process, where the voluntariness of a confession is brought into question, the trial judge should solely and finally determine the voluntariness of the confession in proceedings outside the presence of the jury, or should permit the jury to pass upon that question only after the judge has fully and independently resolved the issue against the accused in proceedings outside the presence of the jury.[1] Under this rule, before a confession, challenged as to voluntariness, may be introduced in evidence, the trial court's conclusion that it is voluntary must appear from the record with "unmistakable clarity." Sims v. State of Georgia, 385 U.S. 538, 544, 87 S.Ct. 639, 17 L.Ed.2d 593.

While Jackson v. Denno dealt with a confession rather than an admission such as we have here, we think the same constitutional principle is nevertheless applicable.[2] Insofar as admissi-

---

1. Oregon follows the second of these alternative courses. See State v. Brewton, 238 Or. 590, 395 P.2d 874, 879–880. In certain circumstances, not present here, failure to conduct the hearing on voluntariness outside the presence of the jury does not constitute grounds for federal habeas relief. See Pinto v. Pierce, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31.

2. A confession is an admission of the crime itself. An admission concerns only some specific fact which, in turn, tends to establish guilt or some element of the offense. Jones v. United States, 111 U.S. App.D.C. 276, 296 F.2d 398, 402. In his written statement now under discussion, Unsworth did not confess to the crime of intentionally killing Moore or the

bility in evidence is concerned, the cases treat confessions and admissions on the same footing. See Jones v. United States, 111 U.S.App.D.C. 276, 296 F.2d 398, 402. In Miranda v. State of Arizona, 384 U.S. 436, 476, 86 S.Ct. 1602, 16 L.Ed.2d 694, dealing with procedural safeguards to be followed in taking statements from persons in custody, the Court said: "No distinction can be drawn between statements which are direct confessions and statements which amount to 'admissions' of part or all of an offense."

■ Jackson v. Denno was decided on June 22, 1964, but it is to be applied retroactively. See Johnson v. State of New Jersey, 384 U.S. 719, 727–729, 86 S.Ct. 1772, 16 L.Ed.2d 882. Thus, although the case now before us was commenced prior to the decision in Jackson v. Denno, the principle there announced is nevertheless applicable.[3]

The warden concedes that Jackson v. Denno is applicable to this case, and was not complied with. He points out, however, that after the question and answer statement had been received in evidence at the state trial over Unsworth's objection, Unsworth took the witness stand and testified to substantially the same effect as his written statement. Under these circumstances, the warden argues, Unsworth waived any objection based on the trial court's failure to make a determination as to voluntariness of the written statement. The warden also argues that, in any event, Unsworth was not prejudiced by the reception in evidence of the statement in question.

■ The warden cites six state court decisions which hold, in effect, that where a defendant takes the witness stand and repeats, in substance, the admissions contained in his pre-trial statement, he waives the objection that the statement was not given voluntarily.[4] However, the question of whether a federal constitutional right has been waived is a federal question and we must therefore be guided by federal precedent.

■ The Supreme Court of the United States has always set high standards of proof for the waiver of constitutional rights. Miranda v. State of Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694. The federal courts are to indulge every reasonable presumption against waiver of such fundamental rights. Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177. The guiding principle to be applied in determining whether there has been a waiver of a constitutional right is whether there was an intelligent relinquishment or abandonment of a known right or privilege. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461.

■ The precise constitutional right in question here is not, as in most of the state cases cited by the warden, the right to exclude from evidence a confession or admission not voluntarily giv-

crime of shooting him while attempting to kill Mrs. Unsworth. But he did admit that he shot and killed Moore. As discussed later in this opinion, the statement also contained recitals which indicated that Unsworth may have intended to kill Moore.

3. In Johnson v. State of New Jersey, the critical date in determining whether other cases would or would not be affected by Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, was

said to be the date on which trials in such cases were "commenced." See 384 U.S. at 732–733, 86 S.Ct. 1772.

4. The cases cited by the warden are: Bell v. People, 158 Colo. 146, 406 P.2d 681; Washington v. People, 158 Colo. 115, 405 P.2d 735; People v. Skidmore, 69 Ill. App.2d 483, 217 N.E.2d 431; State v. Frazier, 245 Or. 4, 418 P.2d 841; State v. Unsworth, 240 Or. 453, 402 P.2d 507 (affirming Unsworth's conviction); and State v. Dotson, 239 Or. 140, 396 P.2d 777.

en. Rather, it is the right to exclude from evidence a confession or admission which, upon being challenged as involuntary, has not first been determined by the trial court to be voluntary in a hearing conducted outside the presence of the jury. When this trial was held in November 1963, neither Unsworth nor his counsel could have known of that right since Jackson v. Denno was not decided until June 22, 1964. Under Johnson v. Zerbst, one cannot waive a then unknown constitutional right. See Grosso v. United States, 390 U.S. 62, 71, 88 S.Ct. 716, 19 L.Ed.2d 906; Greenwood v. United States, 4 Cir., 392 F.2d 558, decided February 9, 1968.[5]

For the reasons indicated we hold that Unsworth did not waive his constitutional right to the Jackson v. Denno procedure.

In arguing that, in any event, Unsworth could not have been prejudiced by introduction of the written statement, the warden contends that without the written statement and without Unsworth's testimony at the trial, the jury would still have found Unsworth guilty. He also urges that since, in his view, Unsworth's testimony was substantially the same as the recitals contained in the statement, the reception of the statement in evidence added no element of prejudice.

In passing upon the warden's contention that the failure to follow the procedure made mandatory by Jackson v.

Denno was, in any event, harmless error, the decision in Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705, provides the guidelines to be followed. It was there held that, before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. 386 U.S. at 24, 87 S.Ct. 824.

The Court further indicated, in *Chapman*, that error in admitting evidence is not harmless if the evidence complained of might have contributed to the conviction. Tightening the principle still further, when applied to constitutional error in the admission of evidence, the Court added: "An error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot, under Fahy [Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171] be conceived of as harmless." 386 U.S. at 23–24, 87 S.Ct. at 828.[6]

The evidence here in question—the transcript of Unsworth's interrogation at the jail—was plainly relevant. It is true, as the warden argues, that Unsworth admitted the shooting of Moore in his written statement and again in his direct testimony at the trial. However, the dispute at trial centered on the question of whether the shooting was accidental, as testified to by Unsworth, or whether Unsworth intended to kill Moore or his wife, as contended by the

---

5. Another reason why Unsworth's testimony given at the trial cannot be regarded as a waiver of his constitutional right to the Jackson v. Denno procedure is indicated in this excerpt from the opinion of the district court:

"Had Unsworth received a hearing outside the presence of the jury on the voluntariness of the oral and written statements, the State may have been unable to make a prima facie case, and it would have been unnecessary for Unsworth to have taken the stand." 261 F.Supp. at 901.

It should also be noted that, as shown at a later point in this opinion, Unsworth's testimony at the trial was not wholly consistent with the recitals in his

written statement. Thus Unsworth might not have taken the witness stand had he not believed that it was necessary to present his version of the shooting in a different light than as revealed in the statement.

6. Further indicating how limited it regarded the area of harmless constitutional error, the *Chapman* Court said:

"[T]here may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." 386 U.S. at 22, 87 S.Ct. at 827.

prosecution. The evidence on this question was necessarily circumstantial, and the statement in question, although not intended by Unsworth to indicate an intent to kill Moore, contains recitals which might possibly have led the jury to so infer.

Referring in that statement to his mental state when enforcement officers came to the Unsworth cabin shortly after the shooting, Unsworth said: "* * * I know I was kind of belligerent and I told you I wasn't going to talk. * * *" Referring to the distance between Unsworth and Moore at the time of the shooting, Unsworth said, in his statement: "Well, I guess it was only about a foot from him where I killed him." At a later point in his statement, Unsworth conceded that the end of the rifle "could have been two or three inches (from Moore)." Several times in the course of the statement Unsworth said that he did not remember a particular circumstance in connection with the shooting.

 There were also many recitals in the written statement which were intended by Unsworth to be exculpatory since they tended to show that the shooting was accidental.[7] But the verdict indicates that these recitals did not impress the jury. Moreover, the fact that the recitals in a statement purport to be exculpatory does not any more warrant the disregard of Jackson v. Denno proce-

dures than it would justify disregard of Miranda v. State of Arizona procedures.[8]

In the case before us, the prosecution used the statement in question for impeachment purposes. Unsworth was forced into saying, on cross-examination, that the description contained in his statement as to the course of the bullet was "not correct," and that he was "confused" when he explained, in the statement, just how the shooting occurred. In several other respects, Unsworth was required on cross-examination, to add explanations concerning recitals in the statement in order to make them consistent with his direct testimony at the trial.

 The considerations discussed above convince us that it cannot here be said that, beyond a reasonable doubt, the written statement which was admitted contrary to the teachings of Jackson v. Denno could not possibly have influenced the jury adversely to Unsworth. We hold that the error in question cannot be disregarded as harmless.

The remaining grounds relied upon by the district court in granting the writ of habeas corpus relate to the reception in evidence at the state trial of testimony respecting certain oral statements made by Unsworth in his cabin shortly after the shooting, and in the jail barbershop a few hours later.

Deputy sheriffs Jack Hunton and Jim Conroy reached the Unsworth cabin fifteen or twenty minutes after the shoot-

---

7. According to Unsworth he had gone outside the cabin with his cocked rifle to investigate why his dogs were making a "commotion." When he returned to the cabin he started to uncock the rifle, at which point he was startled by his wife shouting, "Put that damn thing down." This caused him to swing around towards Moore, and his left thumb accidentally slipped off of the hammer which he had started to release.

8. In Miranda, 384 U.S. 436, 476–477, 86 S.Ct. 1602, the Court made it clear that the rule there announced had application to exculpatory as well as inculpatory statements. As the Court said:

"If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. In fact, statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement. In Escobedo itself, the defendant fully intended his accusation of another as the slayer to be exculpatory as to himself."

ing of Moore. They were accompanied by Mr. and Mrs. William Walker, who operated a nearby cafe, and Bob Hart. Hunton testified at the trial that, during the few minutes he and Conroy were there before Unsworth was taken to the jail, Unsworth said he had killed "poor old Tony"; said he didn't intend to kill Tony and Tony was his best friend; and said: "I'm sorry. I'm sorry"; "He hollered at me and got in my way and I shot him"; and "You're the one that I intended to kill anyway" (indicating Mrs. Unsworth who was present).

Mr. and Mrs. Walker testified that during this visit Unsworth said that he meant to shoot his wife and not Tony. Conroy testified that Unsworth said, on this occasion, "There is Tony—he got in my way and I had to kill him." [9] While there was no testimony that deputies Conroy or Hunton asked Unsworth any questions, he did not make any statements until Walker went over to the bed and asked Unsworth what was going on.[10]

All of these government witnesses testified that Unsworth was very intoxicated at this time. He was lying face down on his bed when Conroy and the others entered his cabin. He staggered around the cabin and was unable to stand up alone. He smelled strongly of alcohol, the pupils of his eyes were dilated, and he was "jabbering," "babbling," and "raving." His speech was heavily slurred. He had great difficulty changing his shirt and filling his pipe. After the officers assisted Unsworth to the "paddy wagon," they placed a mattress on the floor of the vehicle for Unsworth's use. As indicated above, his statements were contradictory since some of his remarks indicated that he had intended to shoot Moore, and other remarks indicated that his intention had been to shoot Mrs. Unsworth.

About 5 a. m. the same morning, Unsworth was taken from another part of the jail to the jail barbershop. In addition to Unsworth, sheriff Brittan, deputy sheriffs Sommers and Louis Bogart, deputy district attorney Thomas, and stenographer Sue Cromwell, were present in the barbershop at that time.

Thomas questioned Unsworth. He asked Unsworth several times what had happened at the cabin. Unsworth's answers were incoherent for the most part. Thomas testified, however, that Unsworth said: "I killed him and I know you are going to get me." Sheriff Brittan testified that he heard Unsworth say: "I shot Tony Moore." Brittan also testified that Unsworth seemed "a little wild," and seemed to be intoxicated at the barbershop. Thomas testified that Unsworth was "wild," shouted constantly and was extremely noisy. Thomas added that Unsworth's eyes were somewhat "blurred" and he did not appear to be alert.

Inexplicably, Unsworth's trial counsel (who did not represent him on this appeal) made no objection at the trial to the questions which elicited the testimony concerning oral statements made by Unsworth at his cabin or at the barbershop. At the close of the state's case, counsel for Unsworth moved for dismissal of the second degree murder charge (leaving the manslaughter charge) on the ground that the state had not proved defendant's acts were unlawful, felonious, with purpose and malice. The motion was denied.

In granting the writ of habeas corpus the district court held that the testimony concerning Unsworth's oral statements was inadmissible because the undisputed evidence shows that when Unsworth made these statements he was too intoxicated to make a voluntary

---

9. Later, on cross-examination, Conroy changed "I had to kill him," to "I killed him."

10. The lack of testimony as to any questioning of Unsworth by the officers at

the cabin is to be compared with deputy Hunton's testimony, at a previous trial on this charge, that Hunton had asked Unsworth at the cabin what happened.

statement. The court ruled that the failure to exclude this testimony therefore deprived Unsworth of due process.

In holding in effect, that this ruling warranted issuance of the writ, the district court held that, as to this issue, Unsworth had exhausted his state remedies. On this appeal the warden does not challenge this ruling on exhaustion of state remedies, nor does the warden contend that Unsworth's failure to object to the testimony when it was offered at the state trial represents a deliberate by-passing of the orderly procedure of state courts, thereby precluding examination of the issue in this federal habeas corpus proceeding. See Henry v. State of Mississippi, 379 U.S. 443, 452, 85 S.Ct. 564, 13 L.Ed.2d 408; Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837. Cf., Kuhl v. United States, 9 Cir., 370 F.2d 20, 26, dealing with proceedings under 28 U.S.C. § 2255 (1964).

Instead, the warden argues that the testimony was admissible despite the undisputed evidence showing Unsworth's state of intoxication. In support of this view the warden asserts that Unsworth's oral statements, described in the testimony reviewed above, were "thoroughly spontaneous, and for that reason, thoroughly voluntary." The warden also urges that the record shows no taint of coercion, that the evidence does not show that Unsworth's intoxication amounted to or resulted in mania, and that, under these circumstances, Unsworth's state of intoxication at the time presents no due process question as to the admissibility of the testimony.

Unsworth's oral statements at the jail barbershop were not "thoroughly spontaneous" for, as indicated above, they were in response to questions by deputy district attorney Thomas. Moreover, under the undisputed testimony of the state's witnesses with regard to both the cabin meeting and the jail barbershop interrogation, a finding that Unsworth was in a drunken stupor approaching mania might well have been warranted. If such a finding had been made by the trial court then, applying the warden's own version of the appropriate test, the testimony in question was wholly inadmissible.

We agree with the district court that if this is the proper appraisal of Unsworth's condition at the time he made the oral statements, the error in admitting the testimony concerning those statements was so gross and so prejudicial as to amount to denial of due process. We are also of the view that, if that testimony were to be excluded, a serious constitutional question would be presented as to whether the evidence as to criminal intent was so completely lacking as to render the conviction a deprivation of due process.

In Townsend v. Sain, 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770, the Supreme Court said that if an individual's "will was overborne" or if his confession was not "the product of a rational intellect and a free will," his confession is inadmissible because coerced. In Blackburn v. State of Alabama, 361 U.S. 199, 211, 80 S.Ct. 274, 4 L.Ed.2d 242, relied upon in *Townsend,* the test applied was whether the confession was the product of any meaningful act of volition. In Ziang Sung Wan v. United States, 266 U.S. 1, 14, 45 S.Ct. 1, 69 L. Ed. 131, the Court stated that the requisite of voluntariness is not satisfied by establishing merely that the confession was not induced by a promise or a threat. "A confession is voluntary in law," said the Court, "if, and only if, it was, in fact, voluntarily made."

▮ In these and most other cases where the voluntariness of a confession has been discussed, there has been the element of police interrogation. Where there is such interrogation, the likelihood of finding coercion and hence, lack of voluntariness, is enhanced. But, in our opinion, voluntariness is not necessarily established by proving that the confession was spontaneous or by proving the absence of an improper purpose on the part of the questioning officers. If by reason of mental illness, use of

drugs, or extreme intoxication, the confession in fact could not be said to be the product of a rational intellect and a free will, to use the test of Townsend v. Sain, it is not admissible and its reception in evidence constitutes a deprivation of due process.

 We accordingly hold that, under the circumstances of this case, Unsworth's conviction, predicated in part on testimony describing incriminating oral statements made by him while he was in a state of gross intoxication, carries with it such a potential for invasion of constitutional rights that it cannot stand unless vindicated by further inquiry.[11]

In Jackson v. Denno, 378 U.S. 368, 393–395, 84 S.Ct. 1774, 12 L.Ed.2d 908, the Court specified the course to be followed in a federal habeas corpus proceeding where it is determined that there was a failure to follow the trial procedure described in Jackson v. Denno. That course is to provide the state a reasonable opportunity to give the accused a new trial, or, if it chooses, an evidentiary hearing concerning the voluntariness of the confession or admission. If the latter course is followed and it is found that the confession or admission was not voluntary then the accused must be accorded a new trial.

We think that, under the circumstances of this case, the course described above should be followed not only with regard to Unsworth's written statement, but with respect to his oral statements as well. Accordingly, the order of the district court is modified to the extent of allowing the State of Oregon a reasonable opportunity to follow one of the courses described above. The habeas corpus proceeding shall be held in abeyance in the district court and if the state does not, within a reasonable time, undertake one of these courses, the district court shall order the release of Unsworth. In all other respects the order of the district court is affirmed.

11. We do not pass upon other grounds relied upon by the district court in granting the writ, nor do we find it necessary to consider Unsworth's contention that, in view of Oregon decisional law retroactively applying Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, the federal habeas court should here do likewise, notwithstanding the rule announced in Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 2d 882, that, in the federal courts, *Escobedo* will not be applied retroactively.