James William **LINDSEY**, Petitioner,

v.

Walter E. **CRAVEN**, Warden, Respondent.

**Civ. No. 68–669–WPG.**

United States District Court, C. D. California.

Nov. 6, 1973.

Paul, Hastings, Janofsky & Walker by Robert G. Lane, Douglas C. Conroy, Los Angeles, Cal., for petitioner.

Evelle J. Younger, Atty. Gen. of Cal. by Keith Motley, Deputy Atty. Gen., Los Angeles, Cal., for respondent.

## MEMORANDUM OF DECISION ON PETITION FOR HABEAS CORPUS

WILLIAM P. GRAY, District Judge.

The petitioner is in the custody of the penal authorities of the State of California, as a result of his 1960 conviction of the offense of armed robbery. In due course, the conviction was affirmed on appeal. Thereafter, he petitioned this court for habeas corpus which, after hearing, was granted on January 24, 1969, conditioned upon the state's failure promptly to grant him a new trial.

On May 25, 1970, the Court of Appeals reversed the order of this court, on the ground that the petitioner had not exhausted his state remedies. [Lindsey v. Craven, 427 F.2d 153 (9th Cir. 1970)]. He has done so now, and he is back before this court seeking the same relief that was purportedly granted him on January 24, 1969. For reasons hereinafter set forth, this court again finds that the petitioner is entitled to such relief, on the ground that at his 1960 trial a confession was received in evidence in violation of the constitutional principles announced in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) and Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d, 1247 (1968).

The exhaustion by the petitioner of his state remedies included a hearing on his habeas corpus petition before the Superior Court of Los Angeles County, at the conclusion of which the Honorable Thomas C. Murphy granted the relief sought, for the same reasons that prompted this court's action in 1969. However, the California Court of Appeal reversed in a formidable opinion by Presiding Justice Files which held that nothing in Jackson v. Denno stands in the way of upholding the 1960 conviction. People v. Lindsey, 27 Cal.App.3d 622, 103 Cal.Rptr. 755 (2d Dist. 1972).

Being strongly of the belief that principles of comity and mutual respect for differing views should be given important consideration in relationships between federal and state courts, and in light of the exceptionally high regard that I have for the judicial competence of Justice Files, I acknowledge considerable reluctance to participate in a "head-on" controversy in the case at hand. However, the statute under

which these proceedings were instituted (28 U.S.C. § 2254) imposes upon *this* court the responsibilities of determining whether ". . . the applicant was . . . denied due process of law in the State court proceeding." (28 U.S.C. § 2254(d)(7)). Instruction in how the court should proceed in this matter is also given in Pike v. Dickson, 323 F.2d 856, 859 (9th Cir. 1963):

"The clear impropriety of relying upon a State Supreme Court's decision as a conclusive determination of questions of this kind is too well settled to require argument . . . .

The reason why a State court's adjudication of facts relating to a claim of denial of constitutional right cannot be final or binding upon a federal court in a habeas corpus proceeding was noted in Brown v. Allen 344 U.S. [443], at p. 500, 73 S.Ct. 397, 97 L.Ed. 469 (1953), as follows: 'But the prior State determination of a claim under the United States Constitution cannot foreclose consideration here of such a claim, else the State court would have the final say which the Congress, by the Act of 1867, provided it should not have. . . .'"

The court proceedings that led to the 1960 conviction are fully and carefully summarized in Justice Files' opinion. My disagreement is not as to what occurred in the trial court, but pertains instead to the legal conclusions as to the effect of those proceedings. Accordingly, although respectful of the views expressed in Justice Files' opinion, this court feels obliged to adjudicate this matter on the basis of its own contrary determination as to the merits. The fact that the petitioner is still in custody as a result of what I believe to have been a constitutionally defective conviction in 1960 further impels such action.

In considering whether the petitioner's 1960 conviction was in violation of his constitutional rights, we are confronted at the outset with the fact that a confession was introduced against him, which he contended to have been involuntary. It is also evident that there was no separate hearing on the issue of voluntariness out of the presence of the jury. Although the facts and the trial procedure in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) were not fully comparable to those here concerned, the principal teaching in Justice White's opinion for the majority in that case is believed to be that, as a constitutional requirement, the issue of a confession should be " . . . determined in a proceeding separate and apart from the body trying guilt or innocence." (378 U.S. at 394, 84 S.Ct. at 1790).

In announcing the above-mentioned rule, the opinion in Jackson v. Denno implicitly assumed that the preliminary hearing on the voluntariness of a confession would take place out of the jury's presence. Justice White referred with approval to the "orthodox rule, under which the judge himself solely and finally determines the voluntariness of the confession." (378 U.S. at 378, 84 S.Ct. at 1781). He then, in a footnote, referred with similar approval to the Massachusetts procedure whereby the trial judge first satisfies himself as to the matter of voluntariness before admitting the confession into evidence for consideration by the jury. He then stated: "It is only the latter confessions [those determined by the judge to be voluntary] that are heard by the jury . . . . [T]he jury does not hear all confessions where there is a fair question of voluntariness, but only those which a judge actually and independently determines to be voluntary . . . ." (378 U.S. at 378, footnote 8, 84 S.Ct. at 1781).

Three years later, in Sims v. Georgia, 385 U.S. 538, 543–544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967), the majority opinion by Justice Clark referred to Jackson v. Denno as having laid down a constitutional rule that " . . . a jury is not to hear a confession unless and until the trial judge has determined that it was freely and voluntarily given."

■ In light of the foregoing, and inasmuch as all of the testimony at the

1960 trial concerning the challenged confession was heard by the judge and the jury at the same time, it would seem to follow that the constitutional rule later announced in Jackson v. Denno was violated. It is also well established that such rule is to be applied retroactively. Johnson v. New Jersey, 384 U.S. 719, 727, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Gladden v. Unsworth, 396 F.2d 373, 376 (9th Cir. 1968).

As Justice Files' opinion points out, in Pinto v. Pierce, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967), a per curiam opinion, in referring to Jackson v. Denno, said:

"This Court has never ruled that all voluntariness hearings must be held outside the presence of the jury, *regardless of the circumstances.*" (Emphasis supplied.) (389 U.S. at 32, 88 S.Ct. at 193).

However, in *Pinto*, the trial judge had inquired of defense counsel as to whether he had any objection to the testimony on voluntariness being taken in the presence of the jury, and the reply was "none whatever." Thus, it is clearly understandable that the "circumstances" there were such that the petitioner was in no position to contend that his right to a separate hearing had been prejudiced.

■ The record in this case discloses "circumstances" that were much different from those concerned in *Pinto*, and it shows that the denial of a hearing on voluntariness out of the jury's presence was prejudicial to the petitioner in several respects, which are now discussed.

*The jury heard about two other alleged robberies.* In testifying about the confession, the police officer gave, before the jury, his version of conversations with the petitioner about two other robberies that the police suspected him of having perpetrated. This highly prejudicial testimony was relevant to the issue of the voluntariness of the confession, but it would not have been admissible on the issue of guilt of the offense being tried. A ruling by the court, after a hearing out of the jury's presence, that the confession was voluntary would have given defense counsel the option of not further challenging the introduction of the confession into evidence, thereby avoiding exposing to the jury the police accusations concerning the other robberies (which the defendant later denied having committed).

■ *The petitioner had to give up his Fifth Amendment right in order to controvert the voluntariness of his confession.* It is now beyond dispute that a defendant who wishes to challenge the validity of a purported confession has a right to do so; he has a right to testify in support of such challenge, and he is entitled to a judicial ruling thereon before the confession may be received in evidence and considered by the jury. These rights were given constitutional status by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). A defendant also has a constitutional right to embrace the Fifth Amendment privilege against self incrimination and remain silent at the trial. In the present case, the denial of a hearing out of the jury's presence on the voluntariness of the confession forced the petitioner to give up the latter constitutional right in order to seek the benefit of the former. The result was that the petitioner was subjected to a wide ranging cross-examination, which covered his purported confession and whether he also confessed or committed the two other robberies, as well as intensive grilling concerning the offense for which he was on trial.

A procedure creating the type of dilemma that the petitioner faced here was recognized by Justice White, in Jackson v. Denno, as being an obstacle to a reliable and fair determination of voluntariness. "[A]n accused may well be deterred from testifying on the voluntariness issue when the jury is present because of his vulnerability to impeachment by proof of prior convictions and broad cross-examination, both of whose prejudicial effects are familiar. The fear of such impeachment and ex-

tensive cross-examination in the presence of the jury that is to pass on guilt or innocence as well as voluntariness may induce a defendant to remain silent, although he is perhaps the only source of testimony on the facts underlying the claim of coercion." (378 U.S. at 389, footnote 16, 84 S.Ct. at 1787).

In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), it was held that testimony given by a defendant in support of a motion to suppress evidence as illegally seized could not be admitted against him at the trial on the issue of guilt. In the course of the opinion of the Court, Justice Harlan said:

"Thus, in this case Garrett was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another." (390 U.S. at 394, 88 S.Ct. at 976).

It seems to me that the circumstances here concerned are closely comparable to those in *Simmons* and that the same rule should apply. *Cf.* McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L. Ed.2d 711 (1971). The procedure not only violated the mandate of Jackson v. Denno by failing to assure a reliable determination of the voluntariness issue, but it also created an unconstitutional burden on the assertion of constitutional rights.

*The trial court ruled the confession admissible before hearing the petitioner's version of the matter.* Inasmuch as there was no separate hearing on the question of voluntariness, there was no specific finding on that issue. The closest the trial judge came to making a definitive ruling occurred immediately after the police officer who took the confession testified as to the circumstances under which it was obtained. Defense counsel objected to the introduction of the confession into evidence on the ground that it was induced by a promise of immunity from other prosecution. The trial judge responded:

"Inasmuch as he had already confessed to the crime before he actually signed this document in this particular conversation, confessed to this charge previously before any discussion was had of the prior crimes and the officer's granting him immunity from those, they obviously, then, were merely seeking, for their own records, to clear up some other crimes which were undoubtedly unsolved on their books. The objection, if there is an objection will be overruled. If it is a motion to strike, it will be denied."

This pronouncement was made early in the prosecution's case, before there had been any occasion or opportunity for the petitioner to tell his story about the circumstances surrounding the confession. Later, the petitioner did take the stand, denied his guilt in the case at hand, and insisted that he had confessed only because the officer told him that if he did not do so, they would file the other two robberies against him. He said that he had not committed those offenses either but was afraid of the prospect of prosecution. By the time the petitioner was able to give his version of the matter, the decision on voluntariness had long been made and the confession was well embedded as an integral part of the prosecution's case.

I neither infer nor mean to imply that the ruling on voluntariness would have been any different had it been made after Lindsey's testimony rather than before. In fact, there is no way of knowing what the ruling would have been; but it is clear that the ruling was made when the judge had heard only one side of the controversy. This seems to me to be the very type of prejudicial lack of due process that the decision in Jackson v. Denno sought to overcome.

The petitioner, through his attorney, tried to avoid the prejudice of having the jury hear the issue of voluntariness. The 1960 proceedings here concerned were a retrial of the robbery charge

against Lindsey, and defense counsel therefore knew from the outset that the police were ready to testify about the other two robberies that were discussed in the conversations resulting in the confession. The record reveals an earnest attempt on the part of defense counsel to accomplish three things: to challenge the validity of the confession; to avoid having the jury hear about the other two alleged robberies; and to preserve his client's privilege against self incrimination. As we have seen, the procedure followed by the trial court (due to an understandable inability to anticipate Jackson v. Denno) necessarily made failure of such attempt inevitable. But defense counsel tried! He desisted from examining the police officer on *voir dire*, lest this elicit mention of the other two robberies; and when the witness thereupon volunteered (unsurprisingly) such testimony on direct examination, counsel moved that it be stricken, expressing concern about the jury having heard this prejudicial testimony that was irrelevant to the issue of guilt. And, finally, he sought to counteract the testimony about the confession by causing his client to give up the privilege against self incrimination and take the stand, thereby submitting himself to the broad cross-examination that followed.

■ The opinion of the California Court of Appeal suggested that some other tactical opportunities were available to defense counsel, and asserted that since he did not take advantage of them, he has no basis for complaining now. (27 Cal.App.3d at 631–632, 103 Cal.Rptr. 755, 760). One of such opportunities was that " . . . he could have asked the trial court to exercise its discretion to hear the voluntariness issue outside the jury's presence."

A claim of waiver of the Jackson v. Denno right was also made in Gladden v. Unsworth, 396 F.2d 373 (9th Cir. 1968). In response Judge Hamley, in speaking for the court, referred to Jackson v. Denno as announcing the constitutional " . . . right to exclude from evidence a confession or admission which, upon being challenged as involuntary, has not first been determined by the trial court to be voluntary in a hearing conducted outside the presence of the jury." (396 F.2d at 377). After pointing out that neither the defendant in the criminal case there concerned nor his counsel could have known of that right because the trial preceded the Jackson v. Denno decision, the opinion stated:

"Under Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 one cannot waive a then unknown constitutional right. [Citing cases]

For the reasons indicated we hold that Unsworth did not waive his constitutional right to the Jackson v. Denno procedure." (396 F.2d at 377).

A similar holding is required here because the right to a separate hearing on voluntariness recognized in Jackson v. Denno, and reinforced by the rationale of Simmons v. United States, was unknown at the time of the petitioner's trial.

With respect to the other "tactical opportunities" mentioned by the Court of Appeal, it is believed extremely doubtful that seizure of them by defense counsel (to the extent that he did not do so) would have aided materially in curing the unconstitutional effects of the failure to grant the separate hearing on voluntariness that we now know to have been required.

Finally, in light of the prejudice to the petitioner discussed above, it cannot be said that failure to hold a separate hearing out of the jury's presence was harmless error beyond a reasonable doubt. *Cf.* Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

It is intended that this memorandum shall constitute findings of fact and conclusions of law, as provided by Rule 52(a) of the Federal Rules of Civil Procedure. An order in accordance herewith is being filed.

ORDER

The above-entitled matter again came on for hearing before this court on September 17, 1973, and was thereupon submitted for decision. In accordance with

the court's findings of fact and conclusions of law contained in a Memorandum of Decision filed contemporaneously herewith, It is ordered, adjudged and decreed that the petitioner be released pursuant to a writ of habeas corpus on December 10, 1973, unless prior to that time the petitioner shall have been granted a new trial by the State of California on the charge that formed the basis for the conviction of which he now complains.

The respondent is ordered to cause the petitioner to be present in this court on Monday, November 12, 1973, at 10:00 A.M. in order that there may be considered the conditions under which the petitioner may be released on bail pending such retrial or pending appeal of this order.