**UNITED STATES of America, Plaintiff,**

v.

**Darlina FRANCE, Defendant.**

Cr. No. 87–00079.

United States District Court,
D. Hawaii.

April 29, 1987.

Daniel A. Bent, Mark J. Bennett, U.S. Attys. Office, Honolulu, Hawaii, for plaintiff.

Benjamin B. Cassiday, III, Honolulu, Hawaii, for defendant.

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS
STATEMENTS

KAY, District Judge.

### I.

This matter came on for hearing before the Court on defendant's motion to sup-

press statements. Defendant asks the Court to suppress all of her statements on the ground that they were involuntary. Defendant also asks the Court specifically to suppress the statements that she made immediately after she was advised of her *Miranda* rights. Defendant contends that these latter statements, made in response to the *Miranda* warnings, were made in response to custodial interrogation, and thus should be suppressed because there had been no *Miranda* waiver. The government contends that all of the defendant's statements were voluntary. The government also contends that the statements made by the defendant directly following her *Miranda* warnings were spontaneous and voluntary, and not the result of custodial interrogation. The government further contends that the statements defendant made in response to MP Conklin's questions, in the restroom, were voluntary, and thus can be used by the government to impeach the defendant, even though they cannot be used in the government's case-in-chief.

The Court finds that after Neil France was shot, officers arrived on the scene and guarded the defendant in her home. At this time, she was neither read her *Miranda* rights nor questioned. While she was in the house, the MPs allowed the defendant to consume three to four of her own cans of beer. As the defendant drank the beers while sitting at her kitchen table, she made a number of spontaneous statements to various MPs. These statements are set out in the Government's Memorandum in Opposition to the Motion to Suppress. The defendant also volunteered to one of the MPs the location of the gun. The defendant was later asked by Agent Chamberlain where the gun used in the commission of the alleged crime was, and she indicated that she had put it away. Defendant, in her motion, does not specifically challenge the statement made by her to Agent Chamberlain in response to his question as to where the gun was. This statement was specifically noted by the Court in its order of April 14, 1987, and in her present motion, defendant has challenged only the statements made to MPs Hetrick, Volz, and Conklin.

After sitting in her house for perhaps one hour, the defendant was taken to CID headquarters where she was read her rights. Agent Chamberlain eventually determined that the defendant was too emotionally distraught to make a knowing waiver of her *Miranda* rights. While she was being read her rights she made a number of statements, beginning with "attempted murder is a serious crime, I just don't know." She went on to make a number of other statements. Later, she was taken to the restroom by MP Conklin. MP Conklin said to her, "I hear you were on the shooting team" and defendant apparently said "yes." MP Conklin also asked her whether she was an expert shot, and defendant replied that she was only an average markswoman.

## II.

■ The Court strongly disapproves of the conduct of the MPs in allowing the defendant to drink her own beer while in custody. Nevertheless, the Court finds that this passive allowance on the part of the MPs did not amount to police coercion. The Court finds that the MPs did not encourage the defendant to drink, and that the defendant's decision to drink the alcohol was her own. The Court further finds that the MPs did not allow the defendant to drink the beer for the purpose of inducing her to confess. The MPs made a mistake in judgment, not caused by any evil or improper motive.

Moreover, even given the fact that the defendant drank three to four beers, the Court finds that the evidence adduced at the hearing on the motion to suppress did not establish that the defendant was intoxicated. The government witnesses testified that they never noted slurred speech or any evidence of inebriation, and the Court cannot find on the basis of the evidence presented to it that the defendant was intoxicated. There was also evidence adduced at the hearing on the motion to suppress which indicates that the defendant was a regular consumer of beer at the time

she allegedly shot her husband; specifically, one of the government witnesses testified that the defendant stated that "the last straw" which precipitated the charged offense occurred when the defendant's husband took away her beer. The evidence supports the fact that the defendant was distraught, apparently because she had just shot her husband, and that her crying was a product of emotional upheaval and not of her alcohol consumption. The defendant did not take the stand at the suppression hearing to testify as to her mental state at the time that she made the statements.

The Court finds that all of the defendant's statements were voluntary and "the product of a rational intellect and a free will." *Mincey v. Arizona,* 437 U.S. 385, 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290 (1978); *United States v. Pinion,* 800 F.2d 976, 980 (9th Cir.1986). The Court also notes that there is no evidence of coercive police activities being used in this case in order to elicit the defendant's incriminating statements. Such activities "are a necessary predicate to the finding that a confession is not voluntary within the meaning of the due process clause of the Fourteenth Amendment." *Colorado v. Connelly,* —— U.S. ——, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986). *See also United States v. Wolf,* 813 F.2d 970, 974 (9th Cir.1987); *United States v. Scheigert,* 809 F.2d 1532, 1533 (11th Cir.1987) ("in the absence of coercive police activity, the mental defect and substance dependency of which [defendant] complains cannot render his confession involuntary"). Thus, none of defendant's statements can be suppressed as involuntary.

The defendant cites a number of cases on the issue of intoxication as it relates to voluntariness. The Court first finds that the cases defendant cites are distinguishable for a number of reasons, including the level of intoxication. The cases involve defendants who were extremely intoxicated, and that is not the situation here. For example, in *Gladden v. Unsworth,* 396 F.2d 373 (9th Cir.1968), the Court stated that the defendant was "very intoxicated." *Id.* at 379. As noted above, the evidence in this case does not establish that the defend-

ant was even slightly intoxicated. In addition, the Court in *Gladden* noted that a statement could be involuntary even in the absence of any unlawful or coercive police conduct. *Id.* at 380. Pursuant to *Connelly, supra,* and *Wolf, supra,* that is no longer the law. Similarly, in *Logner v. North Carolina,* 260 F.Supp. 970 (M.D.N.C.1966) the defendant was extremely intoxicated. As noted, that is not the case here. The Court finds the remainder of defendant's cases similarly distinguishable.

### III.

 Regarding defendant's statements made directly following her *Miranda* warnings, the Court notes that the government has agreed to stipulate that the defendant's statement regarding attempted murder being a serious crime will not be used. Thus, the Court makes no finding on whether that statement would otherwise be usable by the government. However, the Court finds that the remainder of the statements defendant made should not be suppressed. The test for what constitutes custodial interrogation is whether the words or actions of the police officers were such that they should have known that those words or actions were likely to elicit an incriminating response. *Rhode Island v. Innis,* 446 U.S. 291, 301–02, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). The giving of *Miranda* warnings itself is not something which officers should know are likely to elicit an incriminating response. The officers were doing what they were required to do under the law. As there was no custodial interrogation, and as the statements of the defendant were spontaneous and voluntary, they cannot be suppressed. *See United States v. De La Luz Gallegos,* 738 F.2d 378, 380–81 (10th Cir.1984). *See also United States v. Booth,* 669 F.2d 1231, 1237 (9th Cir. 1981); *United States v. Guido,* 704 F.2d 675, 676–77 (2d Cir.1983).

Counsel for the defendant has directed this court's attention to a number of cases which purportedly stand for the proposition that there is no *Miranda* waiver "if the individual indicates in any manner that an

attorney is desired." *U.S. v. Fouche,* 776 F.2d 1398 (9th Cir.1985); *U.S. v. Heldt,* 745 F.2d 1275 (9th Cir.1984). In *Fouche,* however, the defendant indicated that he "might want to talk to a lawyer", and in *Heldt* the defendant refused to sign a written *Miranda* waiver. Furthermore, in *Fouche* and in *Heldt* law enforcement officials proceeded to interrogate the defendants after they had indicated a desire for an attorney. In the instant case, the defendant did not clearly indicate whether or not she desired an attorney; and the law enforcement officials thereafter asked no further questions except for MP Conklin's questions discussed previously at the end of Section I of this order. More importantly, however, the statements sought to be suppressed in the instant case were not the product of a custodial interrogation. Accordingly, this court finds that the statements were spontaneous and voluntary.

■ As for the statements made in response to MPs Conklin's questions, the Court finds, as conceded by the government, that the statements were taken in violation of *Miranda.* Nevertheless, the Court finds that despite the lack of *Miranda* warnings, the statements were voluntary and trustworthy. Thus, they can be used to impeach the defendant, and to attack her credibility, if she takes the stand. *See Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *United States v. Miller,* 676 F.2d 359, 363–64 (9th Cir. 1982); *United States v. Scott,* 592 F.2d 1139 (10th Cir.1979). *See also Harris v. New York,* 401 U.S. 222, 226, 91 S.Ct. 643, 646, 28 L.Ed.2d 1 (1971).

Thus, except as specifically noted above, the Court finds that defendant's contentions are without merit, and defendant's motion is denied.