[Crim. No. 21008. Second Dist., Div. Four. Sept. 6, 1972.]

THE PEOPLE, Plaintiff and Appellant, v.
JAMES WILLIAM LINDSEY, Defendant and Respondent.

624

■■■■■■■■■

**COUNSEL**

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Samuel E. Spital, Deputy Attorney General, for Plaintiff and Appellant.

Paul, Hastings, Janofsky & Walker, Robert G. Lane and Douglas C. Conroy for Defendant and Respondent.

**OPINION**

**FILES, P. J.**—This is an appeal by the People from an order of the superior court directing that defendant "be released pursuant to a writ of habeas corpus" unless he is granted a new trial on the charge of which he was convicted in 1960. The ground of the superior court's decision was that in defendant's 1960 trial a confession was received in evidence in violation of the federal constitutional principles announced in *Jackson* v. *Denno* (1964) 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R. 3d 1205].

### Procedural History of the Case

On November 12, 1959, defendant was charged with armed robbery (Pen. Code, § 211). At his first trial on this charge the jury was unable to agree on a verdict, so a mistrial was declared on January 6, 1960. A retrial began on January 29, 1960, resulting in a verdict of guilty, after which defendant was sentenced to state prison for the term prescribed by law, i.e., five years to life (Pen. Code, § 213). Defendant's appeal from this judgment resulted in an affirmance. (*People* v. *Lindsey* (1961) 188 Cal.App.2d 471 [10 Cal.Rptr. 488].) In 1965 defendant filed a petition for a writ of habeas corpus in the Supreme Court of California which was denied.

On September 27, 1966, defendant was paroled, but a few weeks later he was returned to prison because of his inability to comply with the parole program.

■■■■■■

In April 1968 defendant petitioned the United States District Court for the Central District of California to issue a writ of habeas corpus. That court held a hearing at which no new evidence was taken. After reviewing the transcript of the 1960 trial, the United States District Court made an order on February 5, 1969, that unless the State of California gave defendant a new trial, it must release him. The State appealed from that order, with the result that the United States Court of Appeals reversed upon the ground that the defendant had not exhausted his state remedies. (*Lindsey* v. *Craven* (9th Cir. 1970) 427 F.2d 153, cert. den. (1971) 401 U.S. 913 [27 L.Ed.2d 813, 91 S.Ct. 886].)

Defendant then filed a petition for a habeas corpus writ in the Superior Court of Los Angeles County, where a judge of that court made an order denying it without a formal hearing on July 9, 1971.

Defendant then petitioned the California Court of Appeal, Second Appellate District, for a writ of habeas corpus, and the court on August 12, 1971, issued an order to show cause returnable before the superior court. Pursuant to that order, a hearing was held in the superior court at which oral and documentary evidence (including the 1960 trial record) was received. Following that hearing the superior court made findings of fact and conclusions of law. The essence of the trial court's legal conclusions was that the case was "controlled by the principles set forth in *Jackson* v. *Denno*" and that the 1960 trial had not been conducted in accordance with those principles. The order from which this appeal has been taken was filed September 29, 1971.

Although the court below heard witnesses, nothing significant developed from the testimony. The prosecution witnesses testified that Judge Sparling (the 1960 trial judge) was a careful, learned, and conscientious judge. The public defender who had represented Lindsey in 1960 had no independent recollection of that trial. The 1971 decision of the superior court was based entirely upon its analysis of the 1960 trial record.

### The 1960 Trial Record

The first witness at the trial was the victim, Donald Largent, who identified defendant as one of the two men who had robbed him at about 2:15 a.m. on October 17, 1959. He also stated that he had identified defendant in a lineup approximately one week after the robbery.

The next witness was Inspector Wiggins of the Long Beach Police Department, who testified that he first talked with defendant on the morning of October 27, the day after his arrest. During this conversation defendant denied that he had committed the robbery.

Another conversation took place after the victim had identified defendant in a show-up.

Inspector Wiggins said: "Then we took the defendant downstairs and talked to him a little while and asked him if he wasn't the man that held the sailor up with the shotgun and he first said no, and we told him, 'Now, the man has identified you, told you to your face that you were the man, we have the shotgun that you used.' And he says, 'Yes, I'm the man that held him up.' We asked him if there was another person with him and he said there was. We asked him if he cared to name him and he said that he didn't."

Inspector Wiggins testified that he then questioned the defendant in the presence of a stenographer who took down the conversation in shorthand. Later the stenographer's transcript was typed, and defendant signed it.

At this point in the trial, Mr. Marin, the deputy district attorney, asked the witness to read the signed transcript to the jury. Mr. Cullum, the deputy public defender representing the defendant, asked and obtained leave to question Wiggins on *voir dire*. The record proceeds thus:

"Q [By Mr. Cullum]: Officer, have you had any conversations with the defendant Lindsey subsequent to the time that he made this statement that you are about to read?

"A Yes.

"MR. CULLUM: May I have just a moment, your Honor?

"THE COURT: You may.

"(Off the record discussion.)

"MR. CULLUM: Your Honor, I thank the Court for the Court's indulgence, but I will not proceed with the voir dire at this time."

Mr. Marin, the prosecutor, then asked the witness if the statements of the defendant were "made freely and voluntarily." The answer was "yes." Then this followed:

"Q [By Mr. Marin] Was there any promise of reward or immunity offered to the defendant at that time?

"A You mean at the time of this statement?

"Q At the time of the oral statement. Any time.

"A Oh. There was a promise that two robberies that he told us about after this robbery would not be filed against him, if that is what you are referring to.

"Q Well—

"THE COURT: Was that before or after he had already told you that he had committed this robbery?

"THE WITNESS: He told us about this first, your Honor.

"THE COURT: He told you about this first?

"THE WITNESS: Yes.

"THE COURT: Very well.

"MR. CULLUM: Your Honor, I'm going to move that the entire statement of the witness be stricken on the ground it is not responsive to the question, it is irrelevant, it is immaterial, it is incompetent.

"THE COURT: The motion will be denied."

Inspector Wiggins then proceeded to read into the record the questions and answers which constituted a detailed confession of the robbery. Defense counsel then asked and obtained leave to approach the bench, after which this colloquy occurred outside the presence of the jury:

"MR. CULLUM: Your Honor, in view of the Court's ruling on my motion to strike the testimony of Officer Wiggins with respect to the defendant's statement concerning other offenses, I feel it is necessary for me to explore the conversations between the officer and my client with respect to these other offenses which are not part of this case.

"MR. MARIN: He has a right to go into that on the theory of whether or not the confession is made voluntarily and whether there's any promise of reward or immunity.

"MR. CULLUM: It's not the legal question of admissibility with which I was concerned so much as I wanted to make a statement for the record that had it not been for the statement made by the officer, that it would not have been consistent with my planned conduct of the case to explore that field, and I am making this statement only so it can't later be said that I have obviated any objection I may have had to this statement by my own questions. My position is that I am placed in the position where I must ask these questions in view of the statement that has been made by the witness. There is no objection or motion of any kind pending. I am merely making the statement for the sake of the record.

"THE COURT: Would you like to have the Court now sustain your motion or grant your motion and strike the officer's testimony that prior to

this time he had been told that they wouldn't file against him, although he had made that confession prior to that time?

"MR. CULLUM: I'm afraid that even if the Court—

"THE COURT: I'd admonish the jury, of course, to disregard it.

"MR. CULLUM: I doubt strongly, in view of the nature of the statements attributed to my client, that the admonition would be of any value.

"THE COURT: I'm willing to do that if you so wish.

"MR. CULLUM: Well, under the circumstances, no, your Honor, I will not make that request, and my reason for not making the request, as I say, is that I don't feel that it is the kind of a thing that the jury could very well disregard.

"THE COURT: Very well.

"MR. MARIN: Your Honor, may I also say this for the record: I think that Mr. Cullum is also entitled to go into that on the theory of whether or not there was any offer of reward or immunity made to the defendant, so if the Court is called upon to instruct the jury as to why Mr. Cullum has gone into this, it could be for two reasons, the one that he has mentioned, and that is that the witness mentioned that there was some talk about prior offenses.

"THE COURT: The Court, in his ruling, as he recalls, at the last trial in this matter, no objection was made to the statement and that you went, yourself, in and developed the fact of this, and that largely motivated the Court in denying the motion at that time, but, as the Court stated, he is willing to grant it now, if you wish.

"MR. CULLUM: Thank you, your Honor."

In the cross-examination which followed, Inspector Wiggins said that he and Inspector Baxter had first talked with defendant about the Largent robbery and when they had finished talking about that they asked defendant if there weren't some more robberies. At first defendant denied there were more. The officer then asked specifically about a number of robberies on which he had reports and defendant admitted participating in two of them.

Immediately after this cross-examination, this occurred outside the hearing of the jury:

"MR. CULLUM: Your Honor, I'm going to object to the introduction of that document in evidence or any testimony respecting it on the ground that

it was given as a result of a promise of reward or hope of immunity. I can't see that it makes any difference that no promises were made with respect to this offense if the defendant were acting under the assumption that he would be granted some leniency, some special consideration. If he were induced thereby to sign this instrument, whether his hopes were directed to this case or to others, it wouldn't make any difference, he would still be acting under a hope of reward, a promise of immunity, which would render, in my opinion, a confession involuntary.

"The Court: Inasmuch as he had already confessed to the crime before he actually signed this document in this particular conversation, confessed to this charge previously before any discussion was had of the prior crimes and the officers' granting him immunity from those, they obviously, then, were merely seeking, for their own records, to clear up some other crimes which were undoubtedly unsolved on their books. The objection, if there is an objection, will be overruled. If it is a motion to strike, it will be denied." On redirect examination, the deputy district attorney sought to go into more detail as to the "other offenses" and an objection to this line of questioning was sustained.

Inspector Wiggins was followed on the stand by Officer Baxter, who testified that he had been present at the conversation in the presence of the stenographer, and he had witnessed defendant's signing of the transcript the following day. At this point, the People moved for introduction of the confession into evidence and the following took place:

"Mr. Cullum: Your Honor, I object to its introduction on the grounds previously stated.

"The Court: The objection will be overruled. It will be received in evidence."

The State rested following cross-examination of Officer Baxter.

Defendant, testifying on his own behalf, denied having committed the robbery, though he admitted having signed the confession. He explained that he had confessed only because he was being threatened with charges on other robberies which he had not committed, that the confession was not true, that he was afraid and had tried to get the best way out.

Defendant testified that on the night of October 16-17, 1959, he had been at a bar called the "Corvet" commencing about 9 p.m.; and later he had gone to Mildred's Cafe, where he arrived "between 1:30 and 2." Mildred's Cafe was just seven or eight blocks from the scene of the robbery, which occurred about 2:15 a.m. Four witnesses called by defendant

testified to seeing him at Mildred's at various times between 1 a.m. and 2:30 a.m.

This direct examination was followed by a wide-ranging cross-examination of defendant, much of which was devoted to his confession and its voluntary nature. Defense counsel never renewed his objection to the confession or to any other incriminating statements made by the defendant.

At the end of the trial, the court's instructions to the jury included the following: "A confession is not voluntary when it has been obtained by any kind or degree of violence, abuse or threat, or by any direct or implied promise of immunity, leniency or other benefit, or by any coaxing, cajoling, or menacing influence which induces in the mind of the defendant the belief or hope that he will gain some advantage by making a confession, provided that any such inducement by which the confession is obtained originates either from a law enforcement officer or in the presence of such an officer, under circumstances from which the accused might reasonably be expected to assume that the inducement is authorized by the officer.

"The mere fact that a confession is made under the belief or hope that the accused will gain some advantage by it does not, in and of itself, make the confession involuntary, because such a belief or hope may originate independently in the mind of the defendant or may be suggested or induced by his own counsel or a relative or friend or by some other means not involving the participation of a law enforcement officer.

"The fact that the court has admitted into evidence the alleged statement of a defendant relative to the offense charged does not bind the jury to accept the court's conclusion, and the jury, before it may take such statement into consideration, must for itself find whether or not it was a voluntary statement. If the jury concludes that a statement was not made voluntarily, it is the duty of the jury to entirely disregard the same and not consider it for any purpose."

### California Law Prior to Jackson v. Denno

The long established rules in California were set forth in *People* v. *Gonzales* (1944) 24 Cal.2d 870, 876-877 [151 P.2d 251]: "At the time the confession is offered, it is incumbent on the prosecution to lay the foundation for its introduction by preliminary proof showing that it was freely and voluntarily made. [Citations.] Before the confession is received, however, the defendant if he requests it must be accorded the opportunity to introduce evidence to overcome the prima facie showing, and if incrimination is dependent upon the confession a refusal of the court to permit such opportunity may constitute prejudicial error. [Citations.] It is the

function of the court in the first instance to resolve any conflict in the evidence on the subject [citations], and if the court concludes that the confession was not free and voluntary it has the power and is in duty bound to withhold it from the jury's consideration. However, if there is evidence that the confession was free and voluntary, it is within the court's discretion to permit it to be read to the jury, and to submit to the jury for its determination the question whether under all the circumstances the confession was made freely and voluntarily. [Citations.] In such a case the court passes preliminarily on the question of the voluntary nature of the confession and its admissibility and although it may determine that the confession is voluntary and admissible, its ruling is not binding on the jury; and it is for that body 'to determine in the last analysis whether a confession is freely and voluntarily made.' [Citations.] The jury determines the issue of the nature of the confession, that is, whether it is voluntary or involuntary, on all the evidence on the issue; and the court is not required to receive evidence out of the hearing of the jury for the purpose of determining preliminarily the question of admissibility. . . ."

With the adoption of the Evidence Code, effective January 1, 1967, California changed its law from the "Massachusetts" rule outlined in the *Gonzales* opinion to the "orthodox" rule which gives the trial judge the final responsibility of determining admissibility, and the court is required to determine the admissibility of a confession outside the presence of the jury, if a party so requests. (Evid. Code, § § 400, 402, subd. (b), 405.)

### Analysis of the 1960 Trial Record

When the first testimony concerning the confession came into the record there was no objection by defendant's attorney. But before the signed confession was received in evidence, counsel cross-examined the officer to explore the possible relationship between the confession and the "understanding" that other offenses would not be charged. Counsel then objected to the introduction of the document on the ground that it was involuntary. The trial court overruled the objection and added its explanation of why it considered the confession voluntary. After the second officer had testified, the objection was renewed and overruled. The document was then received in evidence. The colloquy makes it perfectly clear that both counsel and the court understood that the court had the responsibility for passing on the issue of voluntariness, and that the court found the confession to be voluntary.

It is apparent that several tactical opportunities were open to defendant's attorney which he did not exploit. He could have objected

earlier to the testimony concerning the confession and moved to strike it; he could have demanded and obtained the opportunity to put his client on the stand to testify on the issue of voluntariness before the court ruled; he could have asked the trial court to exercise its discretion to hear the voluntariness issue outside the jury's presence;[1] he could have moved to strike the confession after the defendant had testified. Since defendant made none of those requests or objections at the trial, he has no basis for complaining now. (See *Curry* v. *Wilson* (9th Cir. 1968) 405 F.2d 110, 112-114, cert. den. (1970) 397 U.S. 973 [25 L.Ed.2d 268, 90 S.Ct. 1090]; *Delaney* v. *Gladden* (9th Cir. 1968) 397 F.2d 17, 21, cert. den. (1969) 393 U.S. 1040 [21 L.Ed.2d 585, 89 S.Ct. 660]; *Garrison* v. *Patterson* (10th Cir. 1969) 405 F.2d 696, 697.)

There is no basis in the record for assuming that defense counsel was incompetent or lacked understanding of the law. His statements show an acute awareness of the voluntariness issue, and the court's duty to rule upon it. It is ordinarily neither helpful nor proper for a reviewing court to draw inferences from the failure of counsel to make all of the motions and objections which were legally permissible, since the reviewing court can never know what the trial attorney knew or reasonably believed as a basis for his tactical decision.[2] (See *People* v. *Garrison* (1966) 246 Cal. App.2d 343, 350 [54 Cal.Rptr. 731].) In this case there is the additional factor that this was a second trial. Only three weeks before, this case had been tried by the same attorneys before the same judge, where defendant's tactics had been good enough to create a reasonable doubt in the mind of at least one juror. At the second trial defense counsel was, of course, aware of what the witnesses had testified to and how the court had ruled on objections.[3] It is understandable that counsel would avoid pressing issues on which he could anticipate adverse rulings by the trial court, and concentrate on making a favorable impression with the jurors.

On this record, the failure of defendant's attorney to move to strike the confession after defendant had given his own version of the underlying circumstances can only be regarded as a deliberate bypass. The record affirmatively refutes any supposition that defense counsel lacked diligence or knowledge of the law.

---

[1]See *People* v. *Oats* (1966) 239 Cal.App.2d 261, 266-268 [48 Cal.Rptr. 579].

[2]Mr. Cullum, who had been defendant's 1960 trial counsel, testified at the 1971 hearing: "Well, I'm sure that there were many things known to me as a trial lawyer that would have affected my conduct of the trial, things that wouldn't have appeared in the record, including decisions, I suppose, whether to make objections or not."

[3]Mr. Marin, who had been the prosecuting attorney, testified at the 1971 hearing that the voluntariness of the confession was argued at the first trial.

### Effect of Jackson v. Denno

In *Jackson* v. *Denno* (1964) 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205], the Supreme Court held unconstitutional the New York practice whereby a confession was submitted to a jury for its determination of voluntariness without the trial judge having first satisfied himself it was voluntary. The opinion recognizes that some states followed the "orthodox" rule where the judge solely and finally determined the voluntariness of the confession, and some states followed the "Massachusetts" procedure where the jury passes on voluntariness only after the judge has independently resolved the issue against the accused. The opinion states (p. 378, fn. 8 [12 L.Ed.2d at p. 916]): "We raise no question here concerning the Massachusetts procedure. . . . Given the integrity of the preliminary proceedings before the judge, the Massachusetts procedure does not, in our opinion, pose hazards to the rights of a defendant."

Again in *Lego* v. *Twomey* (1972) 404 U.S. 477, 481, footnote 3 [30 L.Ed.2d 618, 622, 92 S.Ct. 619], the court said: "Our decision in *Jackson* cast no doubt upon the orthodox and Massachusetts procedures . . . ."

There is little room for doubt that the Supreme Court classified the California practice as being the "Massachusetts" procedure. An appendix to the separate opinion of Mr. Justice Black appends a table which lists California in the "Massachusetts" category. (378 U.S. at p. 418 [12 L.Ed. 2d at p. 940].) The majority opinion has an appendix listing states where it is unclear whether the Massachusetts or New York procedure is used. (378 U.S. at p. 379, fn. 9 [12 L.Ed.2d at p. 917] and p. 396 [12 L.Ed.2d at p. 927].) California is not in that listing.

The opinion of the California Supreme Court in *People* v. *Gonzales, supra,* 24 Cal.2d 870, 876, spelled out clearly the duty of the trial court to afford the defendant a hearing, and the opportunity to present evidence on the issue of voluntariness, and to resolve any conflict in the evidence and withhold the confession from the jury's consideration unless the court found it to have been free and voluntary.

There is the suggestion in defendant's argument that the California procedure, as outlined in *Gonzales,* did not meet the constitutional standard of *Jackson* because California did not require that the hearing before the court be held outside the presence of the jury. Some basis for that argument is found in footnote 16 of the *Jackson* opinion (378 U.S. at p. 389 [12 L.Ed.2d at p. 923]) where the court pointed out a "further obstacle" to a fair determination under the New York rule, in that "an accused may well be deterred from testifying on the voluntariness issue when the jury

is present because of his vulnerability to impeachment by proof of prior convictions and broad cross-examination . . . . The fear . . . may induce a defendant to remain silent . . . ."

Subsequent decisions have made clear that the court was not establishing, as a matter of constitutional law, the requirement that the first hearing be outside the presence of the jury. In *Pinto* v. *Pierce* (1967) 389 U.S. 31, 32 [19 L.Ed.2d 31, 33, 88 S.Ct. 192], the court said: "This Court has never ruled that all voluntariness hearings must be held outside the presence of the jury, regardless of the circumstances."

In *United States* ex rel. *Russo* v. *State of New Jersey* (3d Cir. 1971) 438 F.2d 1343, 1348, the court said: "We think, however, that the trial court did not commit reversible error when in the presence of the jury it held an inquiry into the admissibility of the confessions. . . . *Jackson* itself recommends but does not require that 'in cases to be tried hereafter a proper determination of voluntariness be made *prior* to the admission of the confession to the jury which is adjudicating guilt or innocence.' "

To the same effect see *Smith* v. *State of Texas* (5th Cir. 1968) 395 F.2d 958, 962-963; *People* v. *Oats* (1966) 239 Cal.App.2d 261, 266-268 [48 Cal.Rptr. 579].

*Johnson* v. *United States* (9th Cir. 1968) 390 F.2d 517, is not to the contrary. In that case, tried only three weeks after the decisions in *Jackson* v. *Denno, supra,* and *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], the defendant's attorney asked for a hearing outside the presence of the jury, to cross-examine police officers concerning violations of defendant's right to counsel as provided in *Escobedo*. No such hearing was held. Eventually the trial court admitted the defendant's confession without any ruling on whether defendant had been denied his right to counsel. The circuit court remanded the case for a further hearing, citing *Jackson* v. *Denno* by way of analogy. It is apparent that the failure of the trial court either to afford the defendant a proper hearing or to rule on the *Escobedo* issue compelled the remand. The case is not a holding that a voluntariness hearing in the presence of the jury is an error of constitutional dimension.

*Gladden* v. *Unsworth* (9th Cir. 1968) 396 F.2d 373, cited by the superior court judge in support of the order appealed from, is not in point. In *Gladden,* the case had to go back to the trial court because the trial judge had refused to rule on the issue of voluntariness.

In *People* v. *West* (1967) 253 Cal.App.2d 348 [61 Cal.Rptr. 216], the Court of Appeal apparently assumed that *Jackson* v. *Denno* required the preliminary hearing to be held outside the presence of the jury. The court

then went on to hold that the hearing had not been held in conformity with *Jackson,* but that there was "no conceivable justification" for remanding the case for a further voluntariness hearing. On certiorari, the United States Supreme Court made a *per curiam* order vacating the judgment and remanding the case "for a hearing as provided in *Sims* v. *Georgia,* 385 U.S. 538, and *Jackson* v. *Denno,* 378 U.S. 368." (*West* v. *California* (1968) 392 U.S. 663 [20 L.Ed.2d 1354, 88 S.Ct. 2297].)

We interpret this as indicating that the Supreme Court accepted the California appellate court's concession that the trial had not been in conformity with *Jackson,* and rejected the view that the error was harmless.

■ Looking back upon defendant's 1960 trial in the light of California law at that time and the subsequent decisions on federal constitutional law, we must conclude that defendant then had the benefit of everything which *Jackson* v. *Denno* subsequently prescribed. Defendant was entitled to a preliminary hearing and a ruling by the court on the voluntariness issue, and the court gave him such a hearing and a ruling. It is true that the ruling preceded defendant's own testimony, but this sequence of events was dictated by defendant's own tactics. His testimony could not have been compelled, and he did not offer it until it was time to present his defense on the merits. He thereby compelled the trial court to rule on the basis of the uncontradicted testimony of the police officers. He had the privilege of moving to strike the confession after he gave his testimony, but he elected not to do so. Defendant's choice of tactics cannot be blamed on any defect in California procedure, or on any error committed by the trial court.

We recognize that there are situations where it would be unfair to refuse to hold the first voluntariness hearing outside the presence of the jury. This is not such a case.

This is a case in which the defendant was confronted with eyewitness identification by the victim and a signed confession supported by competent evidence of voluntariness. Defendant's "alibi" witnesses placed him close to the scene at a critical time. He had no other defense except to take the witness stand and deny the offense and attempt to explain away his confession. His handicap was not the law or the judge or the prosecutor— it was the evidence which confronted him, and the absence of other evidence to rebut it. The trial was circumscribed by defendant's choice of tactics, which were limited by what defendant had to work with. Had *Jackson* v. *Denno* been on the books in 1960, the record would have been no different.

## *The Superior Court's Findings*

In hearing defendant's application for post-conviction relief by writ of habeas corpus in 1971, the superior court was reviewing the record of a trial conducted by another judge almost 12 years earlier. At the close of the 1971 proceedings the superior court made a number of "findings of fact." One of them stated: "3. At the trial of petitioner, commencing on January 29, 1960, the trial judge either made (1) no findings as to the voluntariness of petitioner's confession before submitting the case to the jury, or (2) if he did make such findings he did it before hearing from defendant-petitioner Lindsey on that issue."

Alternative (1) of the finding is untrue, as the 1960 trial record shows. Alternative (2) is true but incomplete. The material fact omitted is that defendant had the opportunity to offer evidence but did not do so before the court ruled.

Another finding states: "4. The matter of voluntariness was submitted by the trial court to the jury without any independent determination of voluntariness by the trial court, and from the transcript it is impossible to know whether the jury found that the confession of the petitioner was voluntary, or that the petitioner's confession was involuntary, or simply ignored it in arriving at a verdict."

The first clause is untrue, as has been pointed out above. The second clause is a truism applicable to any general verdict of a jury. This is a reason given in the *Jackson* opinion for requiring the trial judge to make his own ruling on voluntariness. ■ There is no requirement of a special verdict of the jury on that issue.

Another finding states: "6. To the extent that the trial court considered the issue of voluntariness of petitioner's confession at the time of trial, he may have done so in light of his views as to the guilt or innocence of petitioner, as reflected in the trial judge's remarks at page 111 of the trial transcript."

The transcript reference is to questions put to the defendant by the trial judge during the course of defendant's cross-examination. This was some time after the confession had been received in evidence. Defendant was being asked about the other two robberies which had not been prosecuted. The trial record shows this: "A   I told them I did it.

"THE COURT: That was the truth, that you had done it, was it not? ·

"THE WITNESS: No, sir.

"THE COURT: It wasn't the truth?

"THE WITNESS: No.

"THE COURT: You hadn't committed any of these robberies?

"THE WITNESS: No, sir."

On the basis of that part of the 1960 trial record the reviewing judge in 1971 suggested that the trial judge had admitted the confession, not because he thought it admissible, but because he thought the defendant guilty. We know of no authority for any reviewing court of any level to indulge in such speculation. ▉ Trial court judgments which are on their face correct, are not overturned because a reviewing court suspects the trial judge based his decision on an unexpressed and improper ground, in violation of his oath of office.

Another 1971 finding states: "7. Petitioner was placed on the horns of a dilemma of either foregoing his right to remain silent as guaranteed by the United States Constitution or being prevented from 'testifying in contravention to the evidence presented by the State of California as to the voluntariness of petitioner's confession."

▉ The "dilemma" referred to is one which faces every defendant when the prosecution introduces damaging evidence on any issue which only the defendant can rebut. He always has the "dilemma"—or choice of privileges—to remain silent or come forward with his own testimony. *Jackson v. Denno* did not eliminate that. In every case where the trial judge rules the confession admissible, the defendant has to decide whether he will remain silent or testify in contravention before the jury.

We have discussed in unusual length the issues raised by the superior court's 1971 decision because we regard this as a matter of the utmost gravity. Defendant was convicted of a serious violent crime, for which he was sentenced to an indeterminate term of five years to life. The time actually to be served in an institution or on parole is determined by the prisoner's progress toward the state's objective of rehabilitation. (See *In re Lee* (1918) 177 Cal. 690, 692 [171 P. 958].) If defendant has not yet been discharged, this fact reflects the finding of the Adult Authority that the correctional and rehabilitative processes have not yet been sufficiently effective to justify his release. If defendant was properly convicted, the people of California are entitled to the protection of the correctional system until such time as the Adult Authority finds it is safe to send defendant back to the community. So far as we can determine from the trial record,

defendant was justly, lawfully, and constitutionally convicted. No other evidence has since been produced which would indicate the contrary.

The order of the superior court is reversed.

Kingsley, J., and Dunn, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 15, 1972. Mosk, J., did not participate therein. Peters, J., was of the opinion that the petition should be granted.