[No. 11606–1–I.   Division One.   July 18, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. SQUAIRE
JOHNSON, JR., *Appellant.*

*Jonathan Cole* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *John Austin, Deputy,* for respondent.

ANDERSEN, C.J.—

FACTS OF CASE

The defendant, Squaire Johnson, Jr., appeals from the judgment and sentence entered following a jury verdict finding him guilty of assault in the second degree while armed with a deadly weapon.

On a Christmas eve afternoon, the defendant while armed with a knife inflicted numerous wounds to the chest, neck and hands of a man living in the same household. It is uncontroverted that but for the prompt arrival of Seattle Fire Department paramedics and an emergency run of a Seattle police car to get a supply of whole blood for him, the victim of the stabbing almost certainly would have died.

The defendant was arrested and ultimately charged with

assault in the first degree.

Prior to the commencement of trial, trial defense counsel stipulated to the admissibility of certain statements made by the defendant to police. Further, and over defense objections, the trial court ruled that the defendant's prior grand larceny conviction would be admissible by way of impeachment in the event he chose to testify.

The defendant did testify at trial. Contrary to the testimony of a number of State's witnesses, he said he used his knife in self-defense and claimed that the wounded man, being younger and larger, was the aggressor. The fact of the defendant's prior grand larceny conviction, which was less than 10 years old, was brought out during the deputy prosecutor's cross examination of the defendant.

The jury returned verdicts finding the defendant not guilty of assault in the first degree but guilty of the lesser included offense of assault in the second degree.

### ISSUES

The defendant's contentions on appeal are summarized by new counsel on appeal in Brief of Appellant as follows:

1. Admission of [the defendant's] custodial statements without holding a CrR 3.5 hearing or obtaining his personal waiver of his constitutional right to such a hearing deprived the defendant of due process of law.

2. The trial court abused its discretion in admitting [the defendant's] prior grand larceny conviction because it was more prejudicial than probative and was not a crime of "false statement" as required by ER 609.

### DECISION

CONCLUSION. We answer these contentions in the negative and affirm the conviction.

CrR 3.5, thus referred to, establishes confession procedures whereby the voluntariness of a defendant's statements is determined prior to their being offered into evidence. In accordance with the procedures there contemplated, the trial court at the omnibus hearing set a time and date for the CrR 3.5 hearing. Then on the hearing date, based upon the written stipulation of respective counsel,

the trial court entered its order waiving the hearing. The portions of the written order dealing with this read as follows:

A 3.5 Hearing having previously been set for hearing this day, Counsel for Defendant stipulates that statements of defendant may be admitted at trial without a pre–trial hearing, limited to the statements written by officers Gebo, Edwards, and Hain in their reports and additional verbal statements made to Offr. Edwards and Det. Gebo listed below:

To Gebo: That he wasn't sorry and that he didn't care if [the victim] died.

To Edwards: That he had had other confrontations with [the victim] wherein [the victim] had "abused him".

At trial, the defendant's various oral statements, as well as his signed written statement (including his signed waiver of his *Miranda* rights), were admitted in evidence without objection.

Nothing in the appellate record informs us whether the defendant personally waived his right to challenge admissibility of his oral and written statements or whether he was present at the time the agreed waiver order was presented to the court for entry.

There was never any question but that the defendant repeatedly stabbed the victim in the presence of their landlady who phoned the authorities. Immediately thereafter the defendant phoned his girlfriend and told her, according to her testimony, "Baby, I think I done killed [the victim]." The landlady was also present at the time but left the room as the police arrived at the scene to find the victim lying on the floor in a pool of blood and the defendant talking on the telephone. As one officer testified:

Q What happened next?
A While looking at the victim and his injuries, it appeared he had been cut with some instrument, and I asked him who had cut him, thinking that the suspect either had already fled the scene or something. At that point the gentleman that was talking on the phone stated, "I cut him. I cut the ——."

(Expletive deleted.)

The defendant was placed under arrest and, as the officers testified, given his *Miranda* rights. At trial, the defendant candidly testified to talking to the officer at the scene and, as to the officer, that "he said, 'Do you understand your rights?' and I said yes."

As another officer was asked and testified:

Q When you were transporting him to the station, did he say anything?

A Several times he stated that he didn't care whether [the victim] died. That [the victim] had abused him before. Basically those were the statements he made, over and over again.

Other officers testified to similar statements made by the defendant.

The defendant's signed written statement reads:

This afternoon, at approximately 2:15, I came home from my girlfriend's house where I was drinking Seagram's V.O.

[The victim] was at my house when I got there. He was drunk. He immediately started picking a fight with me. We have had problems in the past. In fact, last Tuesday or yesterday he put a knife to my throat.

Today I grabbed him and stabbed him several times in the front and back and then I cut his throat with my knife. I just kept jugging him. I don't know how many times.

I just waited there and the aid car and the police came.

I stabbed this man because I was tired of him bugging me. I am not sorry I hurt him because he wouldn't leave me alone.

This is a true and voluntary statement I have given Detective Gebo. I have given it freely without threats or promises of any kind.

The initial volunteered statements by the defendant were volunteered noncustodial utterances not under the aegis of *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). *State v. McKeown*, 23 Wn. App. 582, 586–87, 596 P.2d 1100 (1979); *State v. Haverty*, 3 Wn. App. 495, 497, 475 P.2d 887 (1970). Upon reading the record of the trial, it is at once obvious that the

admission of the defendant's other statements, objected to for the first time on appeal, was helpful to the defense theory of the case, which was primarily self–defense. Trial defense counsel also made an excellent record for appeal and if there is some shred of possible trial error which she did not effectively preserve for appeal, it has escaped our attention.

As we read the record in this case, it conclusively demonstrates that trial defense counsel deliberately, carefully and as a matter of trial strategy (which proved quite successful) waived the CrR 3.5 hearing and possible defense grounds of objection to the admissibility of the defendant's statements. The proof of the success of this strategy is that trial defense counsel did very well for her client, winning a "not guilty" verdict on the more serious charge of assault in the first degree.

In point is the Ninth Circuit's decision in a case involving similar issues, *Curry v. Wilson,* 405 F.2d 110 (9th Cir. 1968), *cert. denied sub nom. Curry v. Nelson,* 397 U.S. 973, 25 L. Ed. 2d 268, 90 S. Ct. 1090 (1970), wherein that court concluded that

> it is nonetheless abundantly clear from the record of the trial that counsel wanted the jury to hear the statements, that he relied on them heavily as supporting the only real defense that he had, and that his reliance was successful. It would be a perversion of the judicial process to now give [the defendant] the best of two worlds upon the basis of such an alleged statement by his counsel. Cf. Nelson v. California, 346 F.2d [73,] 81 [(9th Cir. 1965)]; Kuhl v. United States, 370 F.2d [20,] 27 [(9th Cir. 1966)]. A contrary result would enable counsel for a defendant to try one strategy by deliberately using, for his client's benefit, evidence that could be claimed to be constitutionally tainted and then, if not satisfied with the result, to get a second trial by claiming that the constitutional taint requires a reversal in spite of his tactical decision. We do not think that the California courts favor such a result; we do not think that this court should favor it either.

(Footnotes omitted.) *Curry,* at 113–14. We agree. While an

express waiver of the CrR 3.5 hearing by the defendant on the record would have been the preferable course, we know of no authority for the proposition that when trial defense counsel feels a defendant's statements will be helpful to the defense, a CrR 3.5 hearing must be held nonetheless. *See Wainwright v. Sykes,* 433 U.S. 72, 86–87, 53 L. Ed. 2d 594, 97 S. Ct. 2497 (1977); *State v. Myers,* 86 Wn.2d 419, 425–27, 545 P.2d 538 (1976); *State v. Rice,* 24 Wn. App. 562, 564–68, 603 P.2d 835 (1979); *People v. Lindsey,* 27 Cal. App. 3d 622, 631–32, 103 Cal. Rptr. 755, 760–61 (1972), *cert. denied,* 411 U.S. 921, 36 L. Ed. 2d 314, 93 S. Ct. 1554 (1973).

There is also no question but that the defendant's written statement, which he testified at trial had been coerced, was merely repetitive of what he said in his initial phone call to his girlfriend (in his landlady's presence), his volunteered oral statement to the police officer and his other oral statements which he gave after being advised of his rights. Accordingly, it was harmless in any event. *State v. Darnell,* 8 Wn. App. 627, 630, 508 P.2d 613, *cert. denied,* 414 U.S. 1112 (1973).

The defendant's prior grand larceny conviction was admissible under both ER 609(a)(1) and (2),[1] both of which were argued in support thereof by the deputy prosecutor at trial.

As to the admissibility of the prior conviction under ER 609(a)(1), the trial court, after hearing argument and considering authority cited to it, ruled that "the critical factor to be considered with respect to this conviction is as to the balancing effect, as to its potential for prejudice, as com-

---

[1] "(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment." ER 609(a).

pared to its beneficial effect as evidence. Having considered that, my ruling is that the prior conviction is admissible for impeachment purposes in the trial." This ruling was not erroneous. *State v. Alexis,* 95 Wn.2d 15, 19, 621 P.2d 1269 (1980); *State v. Thompson,* 95 Wn.2d 888, 892–93, 632 P.2d 50 (1981).

■ Furthermore, the prior conviction was properly admitted under ER 609(a)(2) since the defendant's grand larceny conviction was a conviction of a crime which "involved dishonesty" as that term is used in this section of the rule. See footnote 1. We are not unaware that there is a diversity of judicial view on this point in this state. *See State v. Zibell,* 32 Wn. App. 158, 166, 646 P.2d 154 (1982) (Andersen, C.J., dissenting); *State v. Burton,* 33 Wn. App. 417, 418–20, 655 P.2d 259 (1982), *review granted,* 99 Wn.2d 1003 (1983). Doubtless the State Supreme Court, as the ultimate arbiter of the rules, which it adopted in this state, will in due course make the final determination on this. For the purposes of ruling on the case before us, however, we believe that the better view is that expressed in *People v. Spates,* 77 Ill. 2d 193, 203, 395 N.E.2d 563, 568, 32 Ill. Dec. 333 (1979):

> Support for our holding [that theft is a crime falling within proposed ER 609(a)(2), involving dishonesty or false statement] is obtained by reference to Webster's Third New International Dictionary 650 (1971) where "dishonest" is defined as a "breach of honesty or trust, as lying, deceiving, cheating, *stealing,* or defrauding * * *." (Emphasis added.) Assuming that the drafters of the Federal rules of evidence intended the natural meaning of their words, we can perceive no reason why proposed Rule 609(a)(2) should not encompass both theft, as an act of dishonesty, as well as perjury, as an act of false statement. This interpretation is especially justified since the rule is written using the disjunctive conjunction "or," designating that either of two alternatives would fall within the rule. Since crimes involving affirmative mis-statements are presumably included by the phrase "false statement," crimes involving *conduct* that is dishonest, of

which theft is surely one, are included by the term "crimes involving dishonesty."

*Accord, United States v. Del Toro Soto,* 676 F.2d 13, 18 (1st Cir. 1982); *United States v. Carden,* 529 F.2d 443, 446 (5th Cir.), *cert. denied,* 429 U.S. 848, 50 L. Ed. 2d 121, 97 S. Ct. 134 (1976); *Lowell v. State,* 574 P.2d 1281, 1284 (Alaska 1978); *Price v. State,* 589 S.W.2d 929, 931–32 (Tenn. Crim. App. 1979); *Tucker v. Lower,* 200 Kan. 1, 434 P.2d 320, 323–24 (1967); *State v. Day,* 91 N.M. 570, 577 P.2d 878, 884 (Ct. App. 1978); *State v. Bucklin,* 304 N.W.2d 452, 453 (Iowa Ct. App. 1981).

Here the defendant had been convicted of grand larceny involving the theft of money from a woman. His conviction of grand larceny was thus a conviction of a crime involving dishonesty and was also admissible for impeachment purposes under ER 609(a)(2).

Affirmed.

CALLOW and SCHOLFIELD, JJ., concur.