Filed 3/26/14  Cen v. Fu CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LI CEN,<br><br>    **Defendant and Appellant,**<br><br>        v.<br><br>GUANGPING FU,<br><br>    **Plaintiff and Respondent.** | A137565<br><br>(Contra Costa County<br>Super. Ct. No. MSC1100579) |

Li Cen appeals from a judgment quieting title to real property in favor of Gaungping Fu and awarding him damages for fraud.  Fu, a Chinese national, sent Cen money she used to purchase real property on his behalf in El Cerrito, California.  After acquiring the property, Cen rented it out but misrepresented the amount of rent she was collecting.  Instead of sending Fu the full amount of the rent, Cen kept a significant portion for herself.  In addition, Cen, who knew Fu could not read English, persuaded him to sign a grant deed transferring the property to her by misrepresenting the nature of the document.

When Fu realized he had been deceived, he sued Cen to quiet title and seeking damages on grounds of fraud and other causes of action.  He prevailed in the trial court, and Cen now appeals from the judgment.  The gist of her claims is that the trial court's findings are unsupported by substantial evidence.  Her arguments lack merit, and we therefore affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND[1]

Fu is a Chinese citizen who cannot speak, read, or write English.[2] Fu knew Cen through Cen's former husband, who had been Fu's college classmate. In 2009, Cen, who holds an MBA, contacted Fu in China about investing in real property in the United States.

After Cen assisted Fu in obtaining a visa, Fu flew from China to San Francisco to meet with her. The two looked at properties in the Bay Area, and after Fu returned to China, Cen located what she thought was a suitable property in El Cerrito. Cen told Fu she could negotiate a purchase price of $700,000, and the property could be rented for $5,000 per month. After speaking with Fu by phone, Cen made an offer to purchase the property in her own name.

On Cen's instructions, on July 28, 2009, Fu wired Cen $695,747 for the purchase of the property. The seller deeded the property to Cen, and then on August 12, 2009, Cen transferred the property to Fu.

Using her own name, Cen signed a lease with tenant E&W Business, Inc., for $7,000 per month, but she did not send Fu a copy of the lease. Instead, Cen sent Fu copies of two lease agreements, the first of which stated the monthly rent for the property was $4,000, while the second put the rent at $7,000. Cen told Fu the first version of the lease would be shown to the government for tax purposes. Although Fu signed both agreements, he did not fax them back to Cen. He thought the lease reflecting the $7,000 rent was essentially a fraudulent agreement, and while he agreed to the rent in the other

---

[1] We have arrived at our understanding of the facts with almost no assistance from the parties. Other than citations to the statement of decision, Fu's brief contains exactly two references to the record. (*Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1379 ["Factual assertions on appeal cannot rest solely on citations to the decision of the trial court."].) Although Cen does cite to the record, her recitation of the facts is one-sided and fails to present evidence unfavorable to her version of events. In addition, the joint appendix contains only a limited number of documents, and neither the parties' pleadings nor the register of actions are among them. (See Cal. Rules of Court, rules 8.122(b)(1)(F), 8.124(b)(1)(A).)

[2] At trial, Fu testified through an interpreter.

lease, he wanted additional terms included. Fu and Cen then agreed orally she would send him the rent of $4,000 per month on a quarterly basis beginning January 1, 2010.

Cen paid a portion of the proceeds of the rent she collected to Fu, though she misrepresented the amount of rent she was collecting. Cen told Fu she was receiving $4,000 per month, when in fact she was collecting $6,720.[3]

Fu returned to the United States in May 2010 to visit the property and to obtain documentation about it. Cen took him to the property, but she told him he could not go inside and could not meet the tenants. After Fu discovered the business being operated in the property was a hospice, not a senior center as he had originally believed, he decided to sell the property and told Cen to find a realtor to list it. Cen told Fu she would try to obtain a loan so she could buy the property herself.

In August 2010, Cen traveled to Shanghai. She called Fu and told him she could get a loan to buy the property, but only if she obtained a certificate from him indicating the purpose of the loan. Cen told Fu she needed the certificate because in the United States, the borrower has to indicate the purpose of the loan obtained. Cen and Fu met at the American consulate in Shanghai, where she had him sign a grant deed transferring the property to her. Because the document was in English, Fu could not read it and did not understand what it was. Cen told Fu he did not need to worry, because the document was only for bank use. Cen recorded the deed on September 1, 2010 (hereafter the September 2010 deed).

Cen told Fu it would take a month to get the loan, but after she stopped responding to his efforts to contact her, he became suspicious. He contacted a Chinese-speaking realtor in San Francisco who informed him Cen's name was the only one on the title to the property. At that point he realized the document he had signed at the consulate was a deed transferring title to Cen.

---

[3]  The trial court assumed the discrepancy between the $7,000 figure in the lease and the amount actually collected by Cen was due to some aspect of the property that justified a monthly credit. The parties do not dispute this point, and it is not material to the issues before us.

Fu contacted Cen in December 2010 and asked her to return the property to him. She told him if he came back to the United States she could give the property back. Fu returned to San Francisco in February 2011 and spoke with a foreign legal consultant about recovering the property. Cen met with Fu and the consultant, but she refused to sign a grant deed returning the property to him, claiming she had no identification with her. She promised to return the next day after she had retrieved her identification, but did not do so. After a further meeting with Cen failed to resolve the matter, Fu reported the incident to the police.

At some point thereafter, Fu filed a civil action for slander of title, to quiet title, fraud, breach of contract, breach of fiduciary duties, and injunctive relief. After a bench trial, the court issued a statement of decision quieting title to the property in favor of Fu and awarding $204,340 in compensatory damages and $75,000 in punitive damages. In its statement of decision, the court noted the case required it to determine the credibility of the witnesses, and it found "the testimony of Fu was fully credible and the testimony of Cen was untruthful." Specifically, the trial court rejected Cen's claim that Fu intended the purchase escrow sum of $695,747 to be a gift to her. It found she had defrauded Fu when she obtained the September 2010 deed by misrepresenting the purpose of the document and when she failed to send him the full amount of the rent she was receiving for the property. The trial court also found Cen liable for slander of title and breach of fiduciary duty, but concluded the damages for those causes of action were the same as had occurred as a result of the fraud.

Cen now appeals from the resulting judgment.

DISCUSSION

Cen raises a number of claims of error in this court, but as we will explain, we need address only her challenge to the trial court's finding on the issue of fraud. The other matters she raises have either been forfeited or concern alleged errors that are not prejudicial.

4

I.     *Standard of Review*

"When faced with a challenge to the sufficiency of the evidence to support a judgment, an appellate court, 'indulge[s] in every reasonable inference to uphold the verdict if possible and defer[s] to the [trier of fact's] assessment of the credibility of the witnesses. [Citation.] "[T]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the [trier of fact]." [Citation.]'" (*Warren v. Merrill* (2006) 143 Cal.App.4th 96, 109.)

The substantial evidence standard of review applies on appeal even when in the trial court the plaintiff is required to establish a fact by clear and convincing evidence. "[T]he requirement of clear and convincing evidence applies only in the trial court. [Citation.] 'The judge may reject a showing as not measuring up to the standard, but, if the judge decides in favor of the party with this heavy burden, the clear and convincing test disappears. On appeal, the usual rule of conflicting evidence is applied . . . .' [Citation.] We are obligated to affirm the trial court's determination so long as it is supported by substantial evidence. [Citation.] In particular we are not required to find *more* substantial evidence to support the trial court's finding 'than we would if the burden of proof had been only a preponderance of the evidence.' [Citation.]" (*Ian J. v. Peter M.* (2013) 213 Cal.App.4th 189, 208.)

II.    *Forfeiture and Harmless Error*

Cen has forfeited a number of the arguments in her opening brief by failing to provide adequate references to the record. Cen first contends the trial court erred in denying her motion for nonsuit, but the joint appendix contains no written motion for nonsuit, she cites to no oral motion in the reporter's transcript, and she provides no legal authority for her claim of error. It is therefore forfeited. (See, e.g., *County of Orange v. Smith* (2005) 132 Cal.App.4th 1434, 1443 ["appellant must identify each order that he asserts is erroneous, cite to the particular portion of the record wherein that ruling is contained, and identify what particular legal authorities show error with respect to each challenged order"].)

5

Also forfeited are the arguments contained in her opening brief under the heading, "Conclusion." To begin with, we may ignore these arguments because they do not appear under an appropriate heading. (*Loranger v. Jones* (2010) 184 Cal.App.4th 847, 858, fn. 9 (Cantil-Sakauye, J.) [general argument headings like "Statutory Analysis" and "Case Analysis" do not satisfy requirements of Cal. Rules of Court, rule 8.204(a)(1)(B) for separate headings summarizing argument].) More fundamentally, Cen's arguments rest on the contention that the trial court's "unreported comments" demonstrate the error of its approach to this case. We will not overturn the judgment on the basis of "comments" appearing nowhere in the record. (See *People v. Lindsey* (1972) 27 Cal.App.3d 622, 637 ["Trial court judgments which are on their face correct, are not overturned because a reviewing court suspects the trial judge based his decision on an unexpressed and improper ground, in violation of his oath of office."].)

We need not address Cen's claims of error regarding the trial court's findings on the issues of slander of title or breach of fiduciary duty, because even if the lower court erred, any error is harmless. (See Code Civ. Proc., § 475 [judgment may be reversed only for prejudicial error].) As the trial court itself remarked, the issue of slander of title was "of no consequence in this action since the damages that are recoverable for the slander of title are the same damages as for the fraud." Similarly, the trial court found the damages awardable for Cen's breach of fiduciary duty "are the same damages as have occurred as a result of the fraud." Thus, even if the trial court erred in finding for Fu on those two issues, it appears Fu received no additional damages as a result, and Cen does not claim otherwise. As we explain below, substantial evidence supports the trial court's findings on the issue of fraud, and thus we need not "consider alleged errors pertaining to other counts in the complaint since, even though defendant's position might be well taken, it would not change the result." (*Strutzel v. Williams* (1952) 109 Cal.App.2d 512, 515; see *Michelson v. Hamada* (1994) 29 Cal.App.4th 1566, 1582 [where trial court merged damages for breach of fiduciary duty and fraud, appellant suffered no harm from any instructional error on theory of fraud].)

6

III.    *Substantial Evidence Supports the Finding of Fraud.*

Cen argues Fu did not produce clear and convincing evidence she defrauded him. We note initially that because the record does not indicate Cen's counsel requested a statement of decision below,[4] we must imply all findings necessary to support the judgment and review the implied findings under the substantial evidence standard. (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 58-60.)  After reviewing the record, we find substantial evidence to support Fu's claim of fraud.

"To prove a cause of action for actual fraud requires evidence of ' "(1) representation; (2) falsity; (3) knowledge of falsity; (4) intent to deceive; and (5) reliance and resulting damage (causation)." '" (*Warren v. Merrill, supra,* 143 Cal.App.4th at p. 110, fn. omitted.)  As explained in our statement of facts, Fu produced evidence Cen made representations to him she knew to be false, including her claim that the September 2010 deed was only a document she needed to obtain a bank loan and her misrepresentations of the amount of rent she was receiving from the property.  (See *id*. at pp. 110-111 [fraud shown where defendant falsely claimed plaintiff had gifted money for down payment on condominium and defendant then used funds to secure property for herself]; *Ach v. Finkelstein* (1968) 264 Cal.App.2d 667, 675-676 [misrepresentations regarding lease concessions were evidence of fraud].)  The trial court could properly infer from the evidence that Cen intended to deceive Fu by these representations, and Fu certainly did rely on them to his detriment.[5]  (See *Warren v. Merrill, supra,* 143 Cal.App.4th at p. 110.)

---

[4]    Cen is prosecuting her appeal in propria persona but had counsel below.

[5]    Cen's brief seeks to reargue the evidence and undermine Fu's credibility as a witness. It is not our function reweigh either evidence or credibility.  (*Warren v. Merrill, supra,* 143 Cal.App.4th at p. 109.)  The trial court made a specific finding that Cen's explanation of the events was "simply unbelievable."  It further found her admission of a scheme to avoid federal income taxes by sending the rent proceeds to Fu in China demonstrated "she has no moral compunctions against defrauding the government."  We defer to this assessment.  (*Ibid*.)

Cen claims Fu failed to overcome the presumption of title established by Evidence Code section 662, which provides: "The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof." But Cen's objections to the statement of decision do not mention this section, and even if they may be construed to raise the issue, it is meritless. That section does not apply "when the plaintiff in a quiet title action challenge[s] as fraudulent a deed in another person's name. 'Evidence Code section 662,' . . . 'has application, by its express terms, when there is no dispute as to where *legal* title resides but there is question as to where all or part of the *beneficial* title should rest.' [Citation.] 'We are unaware, however, of a single reported case in which Evidence Code section 662's presumption and burden were applied when the legal title itself was in dispute. Nor can we see anything in the language of section 662 requiring such application.' [Citation.] This interpretation of section 662 appears self-evidently correct. Otherwise, the section would encourage fraud by permitting a dishonest person, simply by creating false documents of title, to shift to an innocent owner the burden of proving ownership by clear and convincing evidence." (*People v. Semaan* (2007) 42 Cal.4th 79, 88-89.)

## DISPOSITION

The judgment is affirmed. Fu shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

8

Jones, P. J.

Simons, J.

Bruiniers, J.

A137565